UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 14-10382 |
| CARL J. SELENBERG | SECTION "B" |
| DEBTOR | CHAPTER 7 |

*************************************************************************

DIANNE BATES
    PLAINTIFF

VERSUS                                            ADV.P. NO. 14-1022

CARL J. SELENBERG
    DEFENDANT

## MEMORANDUM OPINION

This matter came before the court on April 20, 2015 as a trial on the complaint of the plaintiff, Dianne Bates for non-dischargeability of a debt, evidenced by a promissory note for $275,000, prepared and signed by the debtor/defendant Carl Selenberg, her former attorney. After considering the testimony of the witnesses, the exhibits entered into evidence at trial, and the arguments of counsel, the court finds that the plaintiff proved that the debt is non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code.[1] The court dismisses the claim under § 523(a)(2)(B) and the untimely claim raised at trial under § 523(a)(4). For the reasons set forth below, the debt is held to be non-dischargeable.

---

[1] 11 U.S.C. § 523. All section references herein are to title 11 of the United States Code (the "Bankruptcy Code").

1

I.      **Background Facts**

The general facts in this case are not seriously in dispute.  Mrs. Bates has had the grave misfortune of retaining successive attorneys who did not properly represent her and did not fulfill their obligations under the Louisiana Rules of Professional Conduct.  Mrs. Bates was seriously injured in an accident on March 11, 2008. She retained attorney Robert Faucheux to represent her, and Faucheux allowed her personal injury claim to prescribe.  Faucheaux notified Mrs. Bates that she had a malpractice claim against him, and she retained the debtor, attorney Carl Selenberg, to represent her malpractice claim against Faucheaux.

Selenberg, on behalf of Mrs. Bates, filed a malpractice claim against Faucheaux but in the wrong venue, and that case was dismissed.  Next Selenberg filed suit in the correct venue but filed the suit only against Faucheaux's malpractice insurance carrier but not Faucheaux.  Again the suit was dismissed for reasons that are unclear to this court.  Finally, Selenberg filed Mrs. Bates' suit against the proper parties in the proper venue, but by that time Mrs. Bates' malpractice claim had prescribed, and the third suit was also dismissed.  Selenberg informed Mrs. Bates of this fact, and he told her that he had no malpractice insurance and no money to pay her.[2]  Selenberg then met with Mrs. Bates and her husband and offered to sign a promissory note in the amount of $275,000, telling Mrs. Bates that one of the cases he was working on might pay out in the future and at that point

---

[2] Trial Exhibit 1.  Letter from Selenberg to Mrs. Bates dated December 9, 2011.

he might be able to compensate her for her loss. Mrs. Bates accepted this offer, and on or about December 16, 2011, Selenberg executed the promissory note that Selenberg had prepared.[3] On June 19, 2012 Mrs. Bates filed a complaint against Selenberg with the Louisiana Disciplinary Counsel.

No payments were ever made on the note, and on November 19, 2013, almost two years after its execution, Mrs. Bates filed suit on the note in the 24th Judicial District Court for the Parish of Jefferson in the state of Louisiana. On February 25, 2014 the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, staying the suit filed in state court. Mrs. Bates then filed this adversary proceeding seeking to have the debt declared non-dischargeable under sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code. Neither her complaint nor the pre-trial order mentions section 523(a)(4) of the Code; however, at trial and in the post-trial briefs, Mrs. Bates attorney made arguments under § 523(a)(4). The debtor's attorney objected to the inclusion of the § 523(a)(4) argument.

## II. Legal Analysis

Section 523(a)(2) of the Bankruptcy Code states that a discharge under section 727 of the Code does not discharge an individual debtor from any debt:

> For money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a

---

[3] Trial Exhibit 3. The note is not dated, but Mrs. Bates testified that she received the note in the same envelope as a letter dated December 16, 2011.

  statement respecting the debtor's or an insider's financial condition;
  (B) use of a statement in writing–
   (I) that is materially false;
   (ii) respecting the debtor's or an insider's financial condition;
   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive.[4]

At trial and in the post trial briefs, Mrs. Bates did not make any argument under 523(a)(2)(B), so the court will dismiss that count without discussion.[5]

 Generally, debts falling within Section 523(a)(2)(A) are debts obtained by frauds "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), *citing*, *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992). The United States Fifth Circuit Court of Appeal has held that in order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied upon such representations; and (5) that the creditor sustained losses as a proximate

---

[4] 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(B).

[5] Mrs. Bates also made a brief argument at trial that she developed further in her post trial brief that the debt is also not dischargeable under § 523(a)(4). The debtor's attorney objected to this both at the trial and in his post trial brief. Because the § 523(a)(4) claim was not pled in the complaint and was not raised until the trial, and because the debtor objected to the inclusion of that cause of action at that late date, the court will not consider the § 523(a)(4) claim.

4

result of the representations.[6] The Fifth Circuit has also noted that the elements required to prove false pretenses or false representations are distinct from those required to prove actual fraud. *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001). To prove false pretenses or false representations, the objecting party must prove that: (1) the debtor's representation was a knowing and fraudulent falsehood; (2) the falsehood must have been describing past or current facts; and (3) the falsehood was relied on by another party. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995), *quoting*, *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992).

Fraud can be based on any type of conduct calculated to convey a misleading impression; thus, it is not relevant whether the representation is express or implied. *In re Acosta*, 2003 WL 23109775 at *13 n.166, *citing*, *In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999). A finding of fraud does not require an affirmative statement and may be predicated on a failure to disclose a material fact. *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997). Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A). *In re Acosta*, 2003 WL 23109775 at *13, *citing*, *In re Docteroff*, 133 F.3d at 216; *In re Wyant*, 236 B.R. at 695. When a debtor has an affirmative duty to disclose information, the failure to convey the information may be considered a false representation for purposes of § 523(a)(2). *In re Young*, 91 F.3d 1367, 1374-75 (10th Cir. 1996).

---

[6] *In re Ritz*, 787 F.3d 312, 319 (5th Cir. 2015).

In the case before the court, the debtor was the attorney for Mrs. Bates, and as such, he was required to abide by the Louisiana Rules of Professional Conduct. Rule 1.8(h) of the Louisiana Rules of Professional Conduct states:

A lawyer shall not:

(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

(2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

The debtor argues that at the time he signed the promissory note, he was no longer acting as Mrs. Bates attorney, and thus did not owe her the duty set forth in Rule 1.8(h). The court disagrees. Selenberg cites no authority for this argument, and the plain language of the rule states that it applies whether Mrs. Bates is a client or a former client. The client who is considering a malpractice suit against his attorney, can almost always be considered a former client, because in general, a client whose attorney has failed him such that a malpractice action is being considered will rarely, if ever, want to continue being represented by that attorney. This does not relieve the attorney from his obligations under Rule 1.8(h), which specifically applies to both unrepresented and *former* clients. The debtor's brief makes the ironic argument that Mrs. Bates was a former client but also that Selenberg agreed to meet with Mrs. Bates on December 15, 2011 only after being assured by Mrs. Bates that she had not hired another attorney and did not want to hire

another attorney.[7] In this court's view this position only makes more appropriate the requirement of Rule 1.8(h) that no claim for malpractice be settled unless that unrepresented client or former client be advised in writing of the desirability of seeking independent counsel and given a reasonable opportunity to seek such advice. There is absolutely no evidence that the debtor ever advised Mrs. Bates, either orally or in writing, to seek independent counsel. To the contrary, he agreed to meet with her only if she had not hired an attorney and did not want to hire another attorney. The court finds that the debtor owed a duty to Mrs. Bates to abide by Rule 1.8(h), and the debtor did not do so. Under the circumstances of this case, this failure to disclose his obligations under Rule 1.8(h) is a false representation for purposes of § 523(a)(2).[8]

The debtor testified at trial that he was aware of the Rules of Professional Conduct, and agreed that he was required to know the contents of the rules, even if he may not have been specifically aware of Rule 1.8(h). The Rules of Professional Conduct are to be taken seriously by attorneys. They are meant to protect clients and hold attorneys to a minimum standard of conduct vis-a-vis their clients. When the Rules are not followed it generally results in situations like that presently before the court. Section 523(a)(2)(A) requires that the debtor know that the representation he made was false. In insisting that Mrs. Bates not be represented by an attorney before the December 15, 2011 meeting that resulted in Selenberg's preparing and signing the promissory note, the debtor violated

---

[7] Debtor's post trial memorandum at p. 3, at p. 9, and at p. 10 (P-23).

[8] *In re Young*, 91 F.3d 1367, 1374-75 (10th Cir. 1996).

Rule 1.8(h) and obtained a distinct advantage that he would not have had if Mrs. Bates had been advised of her right to independent legal counsel. Selenberg knew or should have known of the requirements of Rule 1.8(h) but insisted that Mrs. Bates not have counsel at that meeting when he concocted the agreement or settlement that bought him almost two years of time without being sued by Mrs. Bates.

With respect to the third element for actual fraud, an intent to deceive can be inferred from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), *quoted in*, *In re Acosta*, 406 F.3d at 372. However, if the debtor made a representation that was based on a justifiably honest belief that it was true, that does not rise to the level of an intent to deceive. *In re Acosta*, 406 F.3d at 372, *citing*, *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).

In the present case, the intent of the debtor might be considered by some as difficult to determine. The conversation between the debtor and Mrs. Bates and her husband was a poor recording, but the court was able to ascertain from it that the debtor appeared to be trying to find a way to make amends to Mrs. Bates for his failure to properly file her case.[9] He offered to give her the promissory note because he represented that he had no money and no malpractice insurance from which she could recover.[10] The

---

[9] Trial Exhibit 22 was a copy of a recording the Bates' made of their conversation with the debtor wherein he offered to sign a promissory note in their favor.

[10] The court notes, however, that no evidence was offered to prove the debtor had no malpractice insurance. Selenberg said he did not, but this was not tested or investigated, which

debtor filed several years worth of tax returns into the record that support his assertion that he did not make much money.[11] He asserts that he had no assets; he was at the time he signed the note, and remained at the time of the trial, essentially judgment proof. On the recording the debtor told Mrs. Bates that if she goes to the Louisiana attorney disciplinary board to file a complaint against him, then she will surely recover nothing. He also told her that he had a few cases that might result in favorable outcomes that would generate some attorney's fees with which he could pay her in the future. The debtor was very careful to impress upon Mrs. Bates that he had nothing at the time of the conversation and to avoid making any firm commitment about being able to pay the note in the future.

From the debtor's testimony at trial and the recording of the conversation between the debtor and Mrs. Bates, the court is left with the impression that the debtor's main concern was to convince Mrs. Bates that taking the promissory note was her only option. The debtor at no time suggested that Mrs. Bates consult another attorney, and the debtor certainly did not advise Mrs. Bates in writing as to the desirability of seeking advice from another attorney as he had the duty to do under Rule 1.8(h). The debtor's primary intent was to buy some time and to keep himself out of trouble. He certainly did not inform Mrs. Bates of her other options; rather, he made it seem as if taking the unsecured and

---

would have been done if another attorney had been recommended as required by Rule 1.8(h).

[11] Trial Exhibits 13, 14, 15 & 16. The debtor's tax returns show that his AGI from 2011 was $547, from 2012 was $14,361, and from 2013 was $16,807. His bankruptcy schedules show a monthly income of $855 from social security and $1,400 from his law practice.

undated note was her only option.[12]

Section 523(a)(2)(A) requires justifiable, not reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), *citing*, *In re Vann*, 67 F.3d 277 (11th Cir. 1995). As opposed to the objective reasonable man, justification is a subjective inquiry, depending on the particular plaintiff and the particular circumstances. *Field*, 516 U.S. at 70-71. Justifiable reliance is gauged by an <u>individual standard</u> of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case. *In re Vann*, 67 F.3d at 281. It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own. *Id.*

Although Mrs. Bates needed to prove only justifiable reliance, she has satisfied the stricter test of reasonable reliance. It was reasonable that she continued to rely on Selenberg's advice and the misleading picture that he drew that her only (or certainly best) option was 1) to accept the note he offered, prepared and signed; 2) not to report him to disciplinary counsel at that time; 3) not to sue him for malpractice; 4) not to get

---

[12] Other options may very well have been available. The debtor, who had practiced law for almost 40 years, knew or should have known that giving a consent judgment to Mrs. Bates would have put her in a much better legal position than the unsecured note suggested by him. He knew she was entitled to have an independent counsel to look at the note he was proposing and that Mrs. Bates should be given a reasonable opportunity to consider the proposal with the advice of independent counsel.

independent counsel who could have (and probably would have) advised her to sue him and any possible malpractice insurer that might be discoverable immediately; and 5) not to insist upon a consent judgment executed by the debtor, rather than the unsecured, undated promissory note suggested by the debtor. Many possibilities present themselves if Mrs. Bates had been advised to get independent counsel and had been given an opportunity to consider options other than the one option presented to her by the debtor acting in his own self interest. Here, the court finds that Mrs. Bates justifiably relied on the debtor and his statements. Mrs. Bates testified that she was under the impression that the debtor was still representing her as her attorney when he offered her the note. Additionally, Mrs. Bates testified that she trusted the debtor, that he had handled other matters for her, and that she had been referred to him by a family friend. Mrs. Bates testimony was credible and straightforward, and the court finds that for this particular plaintiff, her reliance in these circumstances was reasonable.

     The court finds that Mrs. Bates sustained a loss. Although it is questionable whether Mrs. Bates ever would have or ever will be able to collect any money from the debtor, Mrs. Bates has lost her chance to pursue the debtor on a malpractice action. The debtor's arguments that had Mrs. Bates proceeded differently, she would be in a better position now, are disingenuous, when it was the debtor who persuaded her to take the note and who convinced her that pursuing a malpractice action against him would be futile. Although it seems unlikely that Mrs. Bates will ever be able to collect any money from the debtor, the court finds that the debt owed, i.e., $275,000, is nondischargeable

pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

New Orleans, Louisiana, September 21, 2015.

                                                      _____
                                                      Jerry A. Brown
                                                      U.S. Bankruptcy Judge